UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIA THOMPSON, an individual and on behalf of all others similarly situated,<br><br>                           Plaintiff,<br>v.<br>LA PETITE ACADEMY, INC., a Delaware corporation; LEARNING CARE GROUP (MI), INC., a Michigan corporation; AIMEE WARD, an individual; and DOES 1 through 100, inclusive,<br>                           Defendants. | Case No. 2:22-CV-04348-AB (JPRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND** |

Before the Court is Plaintiff Asia Thompson's ("Plaintiff") Motion for Order Remanding Action to State Court ("Motion," Dkt. No. 10). Defendants La Petite Academy, Inc., Learning Care Group (MI), Inc. ("LCG"), and Aimee Ward ("Defendants") filed an opposition (Dkt. No. 13) and Plaintiff filed a reply (Dkt. No. 14). The Court finds this matter appropriate for resolution without oral argument and therefore **VACATES** the October 7, 2022 hearing. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The Motion is **DENIED**.

I.    **BACKGROUND**

Plaintiff initiated this action by filing a Complaint in California Superior Court for the County of Los Angeles on May 11, 2022 against Defendants. (*See* Not. of Removal Exh. A ("Compl.").) The Complaint alleges that Plaintiff and the putative

1.

class members were not paid all wages, provided meal and rest periods, issued accurate wage statements, or paid all wages due upon termination. Compl. ¶¶ 11-18. Plaintiff alleges that these violations "aris[e] out of and [were] caused by Defendants' common course of conduct in violation of laws and regulations," and that "Defendants' policies and/or practices that have resulted in the violation of the Labor Code." *Id.* ¶¶ 27, 29. Plaintiff also consistently alleges that the violations occurred only "at times." *See, e.g., id.* ¶ 29.

Defendants removed the action to this Court on June 24, 2022 on the basis of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Notice of Removal ("NOR," Dkt. No. 1). On July 25, 2022, Plaintiff filed the present Motion along with Objections to Evidence and the Declaration of Jeffrey C. Bils ("Bils Decl."). (*See* Dkt. Nos. 10-1, 10-2.)

## II. LEGAL STANDARD

### A. Removal

A defendant may remove a civil action filed in state court to federal court when the federal district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). "A suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987).

A removing defendant bears the burden of establishing federal jurisdiction. See *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). To meet this burden as to the amount in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

Only "when the plaintiff contests, or the court questions, the defendant's allegation" must the defendant submit evidence to establish the amount in controversy by a preponderance of the evidence. *Id.* at 89 (citing 28 U.S.C. § 1446(c)(2)(B)); *see*

*Ibarra*, 775 F.3d at 1195; *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) ("When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold."). The Court should "treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal."). The plaintiff may submit evidence to the contrary. *Ibarra*, 775 F.3d at 1198 (citing *Dart Cherokee*, 574 U.S. at 89). "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Once "both sides submit proof . . . the court then decides where the preponderance lies." *Ibarra*, 775 F.3d at 1198. "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.

### B. Jurisdiction under Class Action Fairness Act (CAFA)

The Class Action Fairness Act ("CAFA") gives federal courts jurisdiction over specified class actions if (1) the parties are minimally diverse, (2) the putative class has more than 100 members, and (3) and the aggregated amount in controversy exceeds $5 million. 28 U.S.C § 1332(d)(2). "[N]o antiremoval presumption attends cases invoking CAFA." *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015). In fact, "Congress passed CAFA with the 'overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (quoting S. Rep. No. 109 14, 35 (2005)).

## III. DISCUSSION

Plaintiff argues that the Court lacks subject matter jurisdiction because Defendants cannot demonstrate that the amount in controversy exceeds $5 million as required by CAFA. In assessing the amount in controversy, courts first look to the allegations in the complaint. *Ibarra*, 775 F.3d at 1197. Courts can accept a plaintiff's good faith allegation of the amount in controversy. *Id*. But if the "plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." 28 U.S.C. § 1446(c)(2)(A); *Dart Cherokee*, 574 U.S. at 84.

Here, the Complaint does not allege an amount in controversy. *See* Compl. In their Notice of Removal, Defendants allege that based on the violations alleged by Plaintiff, the amount in controversy is estimated to be $7,272,433.77. *See* NOR at 5-6. Because Plaintiff contests the amount in controversy, Defendants must provide evidence to support their calculations. To satisfy that requirement, Defendants filed declarations from Andrew Cook, labor economist and consultant (Cook Decl., Dkt. No. 13-1); Monica Howard, senior counsel of Childtime Childcare, Inc., a subsidiary of Defendant LCG (Howard Decl., Dkt. No. 13-2); and David Szwarcsztejn, counsel to Defendants. (Szwarcsztejn Decl., Dkt. No. 13-3.) Based on the evidence discussed in those declarations, Defendants submit figures regarding the damages estimated for certain of Plaintiff's claims. Defendants did not calculate damages for all of Plaintiff's claims because they contend that the below claims alone exceed CAFA's amount in controversy requirement:

| **Claim** | **Amount in Controversy** |
|---|---|
| Unpaid Meal Premiums | $1,472,660.26 |
| Waiting Time Penalties | $3,997,572.50 |
| Wage Statement Penalties | $1,802,200.00 |
| **Total** | **$7,272,433.77** |

NOR at 6. The Court notes that Plaintiff does not provide any evidence to rebut Defendants' showing.

4.

### A. Evidentiary Objections

Plaintiff filed evidentiary objections to Defendants' evidence, in particular to the Cook Declaration. (Dkt. No. 10-2.) Plaintiff objects that parts of the Cook Declaration violate the best evidence rule, fail to authenticate, and are hearsay.

In evaluating the existence of diversity jurisdiction on a motion to remand, courts "consider . . . summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Fritsch*, 899 F.3d at 793. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must . . . set out facts that would be [but not necessarily are] admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4). At summary judgment a district court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial. *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016).

Plaintiff objects to certain parts of the Cook Declaration based on Federal Rules of Evidence (FRE) 1002, the best evidence rule. Plaintiff contends that the actual contents of the payroll database or certain of the Excel sheets referred to should be provided rather than simply referred to in a declaration in order to prove the amount of Plaintiff's wages and other figures relied upon. However, under FRE 1002, "payment may be proved without producing the written receipt which was given. Earnings may be proved without producing books of account in which they are entered." Fed. R. Evid. 1002 Advisory Committee's Note. Further, Plaintiff has had an opportunity to claim that the figures reported are incorrect, but has not done so. Accordingly, this objection is overruled.

The objections based on lack of foundation, inadmissible opinion of lay witness, hearsay and speculation are overruled. Howard, as a Senior Counsel employed by a subsidiary of Defendant LCG, and a person with access to the company's records and familiar with the data bases and computer systems that Defendant LPA uses to maintain its human resources, timekeeping, and payroll

records, stated that she gave accurate copies of these reports to Cook to analyze. Howard Decl. ¶¶ 1-6.

More significantly, and as to Plaintiff's remaining evidentiary objections, Plaintiff does not argue that Defendants' declarations and evidence would not be admissible under any circumstances at a trial, and the material does not present any insurmountable evidentiary obstacles. Accordingly, the Court may consider this evidence. Plaintiff's evidentiary objections are **OVERRULED**.

### B. Waiting Time Penalties Estimate is Reasonable

Plaintiff asserts that Defendants improperly rely on a 100 percent violation rate in estimating the waiting time penalties. Mot. at 10. Plaintiff points out that the Complaint expressly states only that Defendants "at times" failed to pay overtime wages or provide all wages earned prior to termination or resignation, making use of a 100 percent violation rate in the calculation incorrect and unreasonable. *See, e.g.*, Compl. ¶¶ 11, 63-64.

A removing defendant is entitled to make "reasonable assumptions" about violation rates to estimate the amount in controversy. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). Plaintiff uses this language to argue that Defendants unreasonably assumed that the violation rate regarding the waiting time penalties was 100 percent.

Cal. Labor Code § 203 provides that employers who fail to timely pay all earned wages upon termination are subject to a fine equal to the employee's normal wages for each day the wages are late, up to a maximum of 30 days. To make their calculation of almost $4 million in waiting time penalties, Defendants assume that each of the terminated putative class members did not receive "at least one" fully compliant meal break during the tenure of their employment and were not paid the meal premium pay in lieu thereof. Defendants calculate: $15.56 (average base hourly rate) x 7.06 (average work day) x 30 (maximum days of penalty pay) x 1,213 (number of putative class members terminated during three-year period) = $3,997,572.50 in

waiting time penalties. NOR at 4.

As an initial matter, Plaintiff does not challenge Defendants' evidence or methodology of calculating the number of putative class members or their hourly wages. Plaintiff bases her argument that Defendants would have "at times" incurred waiting time penalties based on the "at times" failure to pay overtime wages. Mot. at 10. However, Defendants base their calculation of waiting time penalties on Plaintiff's allegations of failure to provide meal periods. NOR at 4-5. Defendants assume, based on the allegations, that each of the putative class members is entitled to the maximum waiting time penalty based on having missed one fully compliant meal break during the tenure of their employment. NOR at 4. The missing meal period as the underlying violation is a conservative estimate based on the allegations in the Complaint, but there need only be one violation that results in the failure to pay an employee upon termination or resignation in order to incur the waiting time penalties.

Further, while Plaintiff does allege that the failure to pay wages owed upon termination or resignation occurred "at times," Plaintiff also alleges that this failure was an "intentional[]. . . polic[y]." Compl. ¶ 64. Plaintiff alleges that Defendants "intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202 resulting in the failure, ***at times***, to pay all wages earned period to termination or resignation." *Id.* (emphasis added). In other words, Plaintiff alleges both that the failure to pay owed wages on termination or resignation resulted from an "intentional[] polic[y] or practice[]" and also that these failures occurred only "at times." Plaintiff then attempts to use the phrase "at times" to distinguish this case from numerous cases where courts found that it was reasonable to assume a 100 percent violation rate based on a pattern or practice. Mot. at 10-11; *see, e.g.*, *Marquez v. Southwire Co., LLC*, No. 21-cv-252-JGB (SPx), 2021 WL 2042727, at *6 (C.D. Cal. May 21, 2021) ("If Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced wage statement and delay

violations."). Plaintiff cannot have it both ways. The Court finds Defendants' assumption that each putative class member would be owed waiting time penalties was reasonable.

Plaintiff also argues that Defendants improperly assumed and provided no evidence to in support of their assumption that each class member would be owed the maximum statutory penalty. Mot. at 10; *see Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) ("Archstone assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion."). "[A]llegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties." *Ramos v. Schenker, Inc.*, No. 18-cv-01551-JLS (KKx), 2018 WL 5779978, at *2 (C.D. Cal. Nov. 1, 2018). In other words, Plaintiff alleges that Defendants have failed to pay the wages required upon termination or resignation, not that they failed to do so within 3 to 30 days or some other amount of time less than the statutory maximum. The maximum statutory penalty therefore is not "assumed" at all; rather, such damages are evident from the face of the Complaint.

Accordingly, Defendants have properly supported their calculation of damages based on waiting time penalties.

### C. Wage Statement Estimate is Reasonable

Plaintiff argues that Defendants' estimate of the damages flowing from penalties owed based on inaccurate wage statements is "exaggerated" because it assumes that every wage statement for every putative class member would have contained an inaccuracy. Mot. at 12.

Defendants calculated their figure for damages as follows: 1,086 (number of putative class members) x $50] + [(18,565 (wage statements issued during one-year limitations period) – 1,086 (number of 1-year putative class members)) x $100] = $1,802,200. NOR at 5. Defendants' calculations are based on records of employees and wage statements that Plaintiff does not contest. Plaintiff only takes issue with

8.

Defendants' assumption that each wage statement would have contained an inaccuracy.

"[D]istrict courts have held that it is particularly reasonable to assume that each putative class member suffered at least one violation during any given pay period, resulting in an inaccurate wage statement, where, as here, plaintiff also alleges that defendant had a policy or practice of failing to pay minimum wages and overtime wages, and failing to provide meal periods." *Mariscal v. Arizona Tile, LLC*, No. 02-cv-071-JLS (KESx), 2021 WL 1400892, at *4 (C.D. Cal. Apr. 14, 2021) (citing *Altamirano v. Shaw Industries, Inc.*, 2013 WL 2950600, *11 (N.D. Cal. June 14, 2013)). Ignoring her own allegations of intentional policies, Plaintiff relies on the "at times" language peppered throughout the Complaint, including alongside allegations of intentional policies of violations. Plaintiff argues that this language means that any assumption made by Defendants regarding the violation rate of any of the claimed offenses was unreasonable. But with regards to the wage statement violations, this argument is particularly untenable because Plaintiff also consistently alleges policies that resulted in the several kinds of violations underlying Plaintiff's claims. It is therefore not unreasonable to assume that at least one of these violations resulted in an inaccurate wage statement each pay period.

The Court wonders what violation rate would be reasonable for Defendants to assume given Plaintiff's allegations that Defendants had intentional policies that only resulted in violations "at times." Accepting Plaintiff's argument regarding its "at times" language could defeat any assumption by Defendants regarding any violation rate. This is contrary to Ninth Circuit law that Defendants may rely on reasonable assumptions in calculating damages for purposes of removal. Given the allegations about the existence of policies resulting in the underlying violations, it was reasonable to assume that each wage statement contained at least one inaccuracy, making Defendants' assumption in their calculation reasonable.

### D. Meal Period Damages Estimates are not Exaggerated

Plaintiff argues that Defendant's calculations of damages for meal periods are "based on the wrong variables" because Defendants use the average hourly rate for all putative class members, rather than only for class members that worked shifts that lasted more than five hours. Mot. at 14. Plaintiff asserts that this "improperly inflates" the estimated amount in controversy because such class members "may have had a lower average rate of pay when compared to the average rate of pay for all putative class members." *Id.* While Defendants based their estimated amount in controversy on evidence, Plaintiff's argument against the calculation is purely speculative. Thus, Plaintiff has not offered a viable alternative that supports her argument, while Defendants have shown by a preponderance that their estimate is reasonable. Even if Defendants did use "the wrong variables," Plaintiff does not argue, and it would seem exceedingly unlikely, that the difference in the damage estimates would be appreciable.

Plaintiff further argues that Defendants reached their damages figure "by assuming, without any factual basis, a 20% violation rate for Plaintiff's meal period claim," which "does not track the Complaint, as Plaintiff alleges only that Defendant ***at times*** failed to provide Plaintiff with compliant meal periods or compensation in lieu thereof." Mot. at 14 (citing Compl. ¶ 48) (emphasis in original).

Plaintiff's Complaint offers no guidance as to the frequency of the alleged violations, relying instead on allegations that Defendants "at times" failed to provide meal periods or compensation for missed meal periods to assert that Defendants' assumed 20% rate is unreasonable. *See* Compl. ¶¶ 48-49. For the reasons discussed above, the Court rejects this argument. "[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages," and requiring Defendants to accurately interpret the meaning of "at times" would require them to effectively do so. *Mortley v. Express Pipe & Supply Co.*, No. 17-cv-1938-JLS (JDEx), 2018 WL 708115, at *2 (C.D. Cal. Feb. 5, 2018) (citing *Korn v. Polo Ralph Lauren*

10.

*Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008)). The assumed violation rate of 20% is reasonable, particularly in light of Plaintiff's failure to offer any alternative limiting principle or rebuttal evidence. *See Mariscal, LLC*, 2021 WL 1400892, at *3 (holding same regarding defendants' assumed violation rate of 25%); *Stanley v. Distribution Alternatives, Inc.*, No. 17-cv-2173-AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (accepting defendant's assumptions regarding meal period violation rates and observing that plaintiff provided no allegations concerning frequency of the alleged violations and no competing evidence that would suggest lower violate rates).

In sum, Defendants have demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5 million.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion to remand.

**IT IS SO ORDERED.**

Dated: October 06, 2022

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

11.